| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>SALDUTTI LAW GROUP<br>Rebecca K. McDowell, Esquire – RM3223<br>800 Kings Highway North, Suite 300<br>Cherry Hill, NJ 08034<br>(856) 779-0300<br>Counsel for Creditor Parke Bank | |
| In Re:<br><br>Charles Eric Kern,<br><br>                          Debtor. | Case No.:   20-18381-ABA<br><br>Chapter:     12<br><br>Hrg Date:   Nov. 12, 2020 at 10:00AM<br><br>Judge:       Hon. Andrew B. Altenburg, Jr. |

## **BRIEF IN OPPOSITION TO DEBTOR'S MOTION TO DISALLOW CLAIM AND IN SUPPORT OF CROSS-MOTION TO ALLOW PROOF OF CLAIM**

NOW COMES Parke Bank ("Parke"), by and through counsel, Saldutti Law Group, and for its Brief in Opposition to Debtor's Motion To Disallow Parke's proof of claim and in Support of its Cross-Motion to Allow Proof of Claim sets forth as follows.

### I. INTRODUCTION

As the Court is aware, this Chapter 12 farm case has been fraught with highly contested motion practice revolving largely around the relationship between Parke and the debtor, Charles Eric Kern ("Debtor"). The bar date for filing claims was September 17, 2020, and Parke's formal proof of claim was not filed on the claims register until October

There is no party involved in this case, from Debtor to the Court to the Trustee, who is not apprised of Parke's judgment in excess of $3 million, nor is there any party involved in this

case unaware that the value of Parke's collateral is far less than that amount. As set forth in Parke's Motion for Relief from Stay filed prior to the bar date and numerous other pleadings and attachments submitted thereafter, Parke has a large money judgment that is undersecured. Debtor's Motion to disallow the claim for late filing is an attempt at a "gotcha" to further frustrate his largest creditor.

While the Federal Rules of Bankruptcy Procedure are explicit about deadlines for filing claims in a Chapter 12 case, there is an exception, recognized in many jurisdictions including here in the Third Circuit. The informal proof of claim doctrine allows a court to recognize filings that are not formal proofs of claim as informal proofs of claim, allowed in the case and subject to amendment by a Form 410. Courts have allowed motions for relief from stay, adversary proceedings, objections to confirmation, and all manner of other documents to serve as informal proofs of claim, timely filed, as long as certain requirements are met.

Parke avers that these requirements are met here. As set forth herein, Parke's first Motion for Relief from Stay, filed in August, sets forth the amount of Parke's claim, the relationship of the parties, the basis for Parke's claim, the value of its collateral, its status in default, and the history of litigation with Debtor. Prior and subsequent submissions to the Court, including Parke's oppositions to Debtor's motion for declaratory order and motion to use cash collateral as well as Parke's motion to convert, second motion for relief from stay, and nondischargeability adversary provide substantial details about the nature and amount of Parke's claim.

Debtor listed Parke as a secured creditor on Schedule D with a balance due of "unknown", despite the fact that a money judgment in an agreed-upon amount had been entered months prior to the bankruptcy case. Debtor is fully aware of the amount of Parke's claim and has been fully aware since the start of this case that Parke is undersecured. He is attempting to

sell real property subject to Parke's mortgages for less than the balance due; he has grifted other creditors and Parke by "selling" or encumbering Parke's collateral without Parke's knowledge or consent, further deepening Parke's lack of security; and he has proposed a Chapter 12 plan that, even as modified, is unconfirmable.

Further, Parke's security interests pass through the bankruptcy unaffected, and at issue is the deficiency balance and any claim Parke may have against the estate. The informal proof of claim doctrine is *an exception* to the hard and fast mandate of Fed. R. Bankr. P. 3002, one that is a valid doctrine in the Third Circuit, and Parke urges the Court to apply it here.

## II. MATERIAL FACTUAL BACKGROUND

1. Debtor filed the instant bankruptcy case on July 9, 2020 ("Petition Date").

2. On July 31, 2020, Debtor filed his Schedules.

3. Debtor lists Parke's claim on Schedule D with a claim amount of "unknown".

4. The debt is marked disputed.

5. On August 7, 2020, Parke filed a Motion for Relief from Stay ("Motion for Relief").

6. The Certification of James Talarico filed with the Motion for Relief ("Talarico Certification") is attached hereto as Exhibit A and incorporated by reference herein.

7. The Talarico Certification contains a detailed factual background on Debtor's relationship with Parke and Parke's lending history with Debtor as well as Parke's collateral, which includes personal and real property.

8. The Motion for Relief includes all loan documents as exhibits as well as copies of the judgment in foreclosure and the law division money judgment obtained against Debtor, and recited the balance due to Parke to the penny, $3,261,900.36.

9. The Motion for Relief discloses that the judgments were entered after "protracted litigation," including appointment of a fiscal agent.

10. The Motion for Relief includes Parke's appraisal of the Real Property valuing the Real Property at $2.39 million and the personal property at $372,650.00.

11. The Motion for Relief describes the other security interests that may attach to Debtor's property, including property tax liens and creditors with competing UCC-1 Financing Statements.

12. The Motion for Relief specifies that Parke has no equity cushion.

13. The Motion for Relief indicates that Parke is underwater with respect to its collateral.

14. Since the Motion for Relief was filed, it has been made clear in numerous pleadings and on the record that Parke is undersecured.

15. Debtor's opposition to Parke's Motion for Relief attempts to further diminish Parke's collateral by listing the items in Parke's personalty appraisal that are liened to other creditors, including collateral that was Parke's to begin with (as set forth at length in Parke's Motion to Convert).

16. In Parke's Brief regarding lien priority in Opposition to Debtor's Motion for Declaratory Order, filed September 3, 2020, Parke was clear that it had claims against the estate, as it sought to protect its security interest in the proceeds of crops Debtor wrongfully used without authorization.

17. The claims bar date in this case was September 17, 2020 ("Bar Date").

18. On October 1, 2020, Parke conducted a 2004 examination of Debtor ("2004 Exam").

19. At the 2004 Exam, Debtor could not cogently explain why Parke's claim is marked disputed in an unknown amount; he could only say "Because I guess they continue to rack up ridiculous amount [sic] of interest even after the filing or prior to." See Exhibit B at 67:17-20.

20. At the 2004 Exam, Debtor admitted that he agreed to the amount of Parke's judgment:

> Q. So you understand that Parke's judgment against you was entered in an amount that you agreed upon; correct?
>
> **A. Yes.**

See Exhibit B at 45:4-7.

21. On October 7, 2020, Parke filed another motion for relief as to a deposit account as well as its Motion to Convert.

22. On October 8, 2020, Parke filed an adversary proceeding against Debtor to render its debt nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).

23. Parke did not file a formal proof of claim on the Claims Register until October 9, 2020.

24. Debtor filed a Motion to Disallow Parke's claim on October 13, 2020 ("Claim Objection").

### III. ARGUMENT

**A. Parke's Security Interests Pass Through the Bankruptcy Unaffected.**

One of the solid tenets of bankruptcy law is that liens pass through bankruptcy unaffected unless the debtor takes certain actions to modify them. 11 U.S.C. § 506(d)(2) provides that a lien securing a claim that is not an "allowed secured claim" as defined therein is void unless the disallowance is due solely to the creditor's failure to file a proof of claim (and indeed, Section

506 alone does not void liens; debtors still must take actions, such as motions, adversary proceedings and plan confirmation). A claim filed late is "tantamount to not filing a claim at all, and therefore, under pre-Code principles and the rational of § 506(d)(2), an untimely claim could not justify voiding the lien securing it." *HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 490 (9th Cir. 2014), citing *In re Shelton*, 735 F.3d 747, 750 (8th Cir. 2013)(cert denied); *In re Hamlett*, 322 F.3d 342, 350 (4th Cir. 2003); and *In re Tarnow*, 749 F.2d 464, 466 (7th Cir. 1984).

Even if this Court disallows Parke's claim as untimely filed, Parke's liens are still intact. Parke has valid recorded mortgages on Debtor's farmland, which he does not dispute. Parke also holds valid, perfected liens on certain equipment as well as intangibles and a bank account holding $25,000. Parke would request that any ruling would affirm that Parke's claim is disallowed only to the extent of any unsecured deficiency balance.

However, Parke avers that its claim should *not* be disallowed. As set forth herein, Parke's Motion for Relief from Stay qualifies as an informal proof of claim and should be allowed as such, subject to amendment by the formal claim filed after the Bar Date.

**B. Parke's Claim Should be Allowed as an Amendment to a Timely-Filed Claim under the Informal Proof of Claim Doctrine.**

While Fed. R. Bankr. P. 3002(a) and (c) require creditors in a Chapter 12 case to file claims within 70 days after the case filing, an exception exists to the rule. "…it is well accepted that the bankruptcy courts are guided by the principles of equity, and that the courts will act to assure that 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" *In re Roper and Twardowsky, LLC*, Case No. 15-32878-SLM, p. 16 (Bankr. D. N.J. July 5, 2017), quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939). Based upon that principal, a bankruptcy court may

permit a claim by a creditor if another document filed in the case may be deemed an <u>informal proof of claim</u>. Id., citing *American Classic Voyages Co. v. Official Committee of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127 (3rd Cir. 2005).

The informal proof of claim doctrine permits a court to deem a late-filed formal proof of claim as timely because it relates back to a different document filed prior to the bar date that qualifies as an informal proof of claim. *Roper and Twardowsky*, supra, at p. 16, citing *In re Han-Hsien Tuan*, 2013 WL 5719505 at *5 (citing *In re Grubb*, 169 B.R. 341, 347 (Bankr. W.D. Pa. 1994)).

The Third Circuit in *Am. Classic Voyages* held that a court must apply a five-factor test to determine whether a document may be deemed an informal proof of claim:

1. The document must be in writing;
2. The document must contain a demand by the creditor on the estate;
3. The document must express an intent to hold the debtor liable for the debt;
4. The document must be filed with the bankruptcy court; and
5. Given the facts of the case, the court must find that it would be equitable to treat the document as a proof of claim.

*Roper and Twardowsky* at p. 16, citing *Am. Classic Voyages* at 130-131.

Outside of the Third Circuit, courts have found that the test is not to be applied formalistically. See *Belser v. Nationstar Mortgage, LLC (In re Belser)*, 534 B.R. 228, 241 (B.A.P. 1st Cir. 2015), citing *Diversified Pacific Opportunity Fund I, LLC v. Cisneros (In re Riley)*, 2013 WL 4854485 at *3 (C.D. Cal. May 7, 2013). "'The primary theme in these cases is notice' and '[t]he salient issue is whether or not a creditor is seeking to introduce a new claim in disguise.'" Id. The court in *Belser* agreed, and so held, that this exception to the "absolute statute

of limitations" for filing claims is "'where some informal proof of claim manifests on the "*judicial record*" the existence, nature, and amount of the claim, which may thereafter be "amended" by a formal proof of claim.'" *Belser* at 241, quoting *In re Thornlimb*, 37 B.R. 874, 875 (Bankr. D. R.I. 1984)(emphasis in original).

A variety of documents have been found to be informal proofs of claim, including motions for relief from stay, letters to the trustee, nondischargeability actions and objections to confirmation. See *The Charter Company et. al. v. Dioxin Claimants (In re Charter Co. et. al.)*, 876 F.2d 861, 864 (11th Cir. 1989), citing *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985) and *In re Guardian Mortgage Investors,* 15 B.R. 284 (Bankr. M.D. Fla. 1981) (in which the court found a motion for relief from stay qualified); *In re Anderson-Walker Industries, Inc.*, 798 F.2d 1285, 1288 (9th Cir. 1986) (in which the court found that letters to the trustee notifying of the debt qualified); and *In re Scott*, 67 B.R. 1011 (Bankr. M.D. Fla. 1986) (in which the court found that an objection to the Chapter 7 discharge together with an objection to a Chapter 13 plan constituted an informal proof of claim). See also *In re Petrucci*, 256 B.R. 704, 706 (Bankr. D. N.J. 2001), which found that a nondischargeability adversary complaint qualified as an informal proof of claim using the five-part test later adopted in the Third Circuit under *Am. Classic Voyages*, and *In re Brown*, 76 F. App'x 471, 472 (3rd Cir. 2003), affirming a decision that a motion for relief from stay qualified as an informal proof of claim.

Parke avers that its Motion for Relief from Stay filed August 7, 2020 ("Motion for Relief") should be deemed an informal proof of claim, and thus the claim filed after the Bar Date should relate back as an amended claim. Each part of the *Am. Standard Voyages* test is met.

### a. The Motion for Relief is in Writing and was Filed with the Bankruptcy Court.

It cannot be disputed that the Motion for Relief is in writing, nor can it be disputed that the Motion for Relief was filed with the Bankruptcy Court and docketed prior to the Bar Date. Therefore, the first and fourth prongs of the *Am. Classic Voyages* test are met here.

### b. The Motion for Relief Contains a Demand by Parke upon the Estate.

The difference between an informal proof of claim and a formal proof of claim is one of form, not substance. *Am. Classic Voyages* at 131. Notice of the claim alone is not sufficient to constitute a "demand on the estate"; to qualify as an informal proof of claim, a document must contain a demand that is "sufficient to put the debtor and/or the court on notice as to the 'existence, nature and amount of the claim (if ascertainable).'" *Id.* at 131, quoting *Charter Co.* at 863.

A proof of claim must provide with specificity the date the debt was incurred, the total amount of the claim, and documents showing that the debtor owes the debt claimed. *Am. Classic Voyages* at 132, citing Official Form 10. This is the showing required to meet the second prong of the test – that is, to put the debtor and the court on notice as to the "existence, nature and amount of the claim." *Id.*

The Motion for Relief contains the following information:

- Debtor executed multiple notes, security agreements, and mortgages in connection with its loans, and the amount of each loan is set forth with specificity in ¶ 4 of the Talarico Certification.

- Debtor executed an Assignment of Rents and Leases in connection with the loans.

- Parke filed a UCC-1 Financing Statement to perfect its liens on Debtor's assets.

- The loans went into default, and Parke accelerated the debt.

- Parke filed both a law division action for a money judgment and a foreclosure action against Debtor, his wife, and CEK Farms, LLC.

- Parke obtained a money judgment and a foreclosure judgment against Debtor in the amount of $3,261,900.36, which amount is stated specifically in the Talarico Certification in ¶¶ 2 and 17.

- The real property securing the loans includes Debtor's farmland, specifically described by block and lot, and Parke allowed certain lots to be sold pre-petition and pre-judgment to reduce the debt.

- Parke obtained appraisals of the real property ($2.39 million) and the equipment ($372,650).

- Debtor's Schedules listed the equipment as well as other farming assets.

- The senior secured claim of Growmark FS "further reduces the equity available to Parke". See Talarico Certification at ¶ 34.

- The total value of Parke's collateral is less than $2.8 million against Parke's judgment in excess of $3.2 million. See Talarico Certification at ¶ 37-38.

- Parke has no equity cushion. See Talarico Certification at ¶ 40.

- Parke became aware that Debtor had transferred or disposed of some of Parke's collateral. See Talarico Certification at ¶ 42.[1]

The loan documents, including the notes, mortgages, security agreements, assignment of rents, and UCC-1 were all attached as exhibits to the Motion for Relief.

The Motion for Relief is extremely detailed regarding Parke's demand. It recites the precise amount due and the precise value of the collateral. It provides the date the loans closed and the dates the judgments were entered. It indicates that Parke is undersecured and has no equity in its collateral. It describes the loan transaction in detail as well as the road to judgment in two different state courts to pursue not only Parke's in rem right to the Real Properties but also Debtor's monetary obligation under the notes. It includes copies of all the loan documents as well as the judgments. In short, the Motion for Relief provides every detail necessary to apprise

---

[1] After the Motion for Relief was filed, Debtor's scheme to convert Parke's collateral became more clear, as set forth in the Motion to Convert and the nondischargeability complaint.

Debtor, the Trustee, the Court and any other creditors in the case that Parke has a claim against the estate, in a certain amount, that is partially secured and partially unsecured.

    **c.   The Motion for Relief Expresses an Intent to Hold Debtor Liable.**

A motion for relief from stay can establish an intent to hold the debtor liable for informal proof of claim purposes by its very filing. See *Charter Co.*, supra, at 864. In *Charter Co.*, the Eleventh Circuit held that a motion for relief from stay evidenced an intent to hold the debtor liable based upon "the filing of the motion itself" as well as its language describing the subject of a pre-petition tort lawsuit. *Id.* The court also held that it may review not only the motion for relief but could also "examine the other documents and actions of the claimants, even if they occur after the bar date." *Id.*, citing *In re International Horizons, Inc.*, 751 F.2d 1213, 1218 (11th Cir. 1985).

Here, the filing of the Motion for Relief clearly evidences Parke's intent to hold Debtor liable. The Motion describes the lawsuits filed and the actions therein, including the appointment of a fiscal agent and Parke's efforts to collect rents and proceeds pre-petition. Furthermore, since the filing of the Motion for Relief, Parke has also filed the Motion to Convert and an adversary proceeding to deny Debtor's discharge based upon his fraudulent conduct, which make it plain that Parke intends to hold Debtor liable for the debt.

    **d.   It Would be Equitable to Treat the Motion for Relief as a Proof of Claim under the Circumstances of this Case.**

Courts have applied their equitable powers in various ways to decide whether this prong of the test is met. In *Petrucci*, Judge Stripp determined that other creditors were not prejudiced by allowing an adversary complaint to serve as an informal proof of claim, as there was no evidence that any other unsecured creditors had detrimentally relied upon the receipt of a certain distribution percentage. *Petrucci* at 707. The court further held that if the creditor's claim is valid

in all other respects but disallowed as untimely, "it would be a windfall to the other creditors to deny the claim." *Id.* Another court, in *Han-Hsien Tuan*, supra, determined that the creditor was sophisticated and represented by counsel with actual notice of the bar date and so would not allow the claim. The District of Delaware has in two cases adopted a totality of the circumstances approach; see *Agassi v. Planet Hollywood International, Inc.*, 269 B.R. 543 (D. Del. 2001) and *In re SemCrude, L.P.*, 443 B.R. 472 (Bankr. D. Del. 2011), cited with approval by Judge Meisel in *Roper and Twardowsky,* supra, based upon the "idiosyncrasies" of the case before her. *Roper and Twardowsky* at p. 24.

The totality of the circumstances approach is appropriate in this case, and the circumstances favor Parke. In *SemCrude*, supra, the court found that the creditor's "consistent assertions of its contract rights throughout" the bankruptcy cases justified allowing the claim. *SemCrude* at 480. In *Roper and Towardowsky*, the court found that, although the creditor was a law firm representing its own interests in the bankruptcy case, and although "no other creditor rival[ed]" the claimant, the claimaint's proposed claims were "not breaking news." *Roper and Towardowsky* at p. 24. The court found that denying the claim would be inequitable and create a windfall for other unsecured creditors, as well as effectively deny the creditor its rights in a lawsuit in a decision that would promote form over substance. *Id.* at 25. The court found that, although its sophistication weighed against the creditor, the circumstances of the case and the balancing of the equities required the allowance of the informal proof of claim.

Here, Debtor has been on notice of Parke's claim. The Trustee has been on notice of Parke's claim. The other creditors have been on notice of Parke's claim. Debtor has acknowledged Parke's security interests. Debtor consented to the amount of the judgment pre-petition. **Debtor filed the bankruptcy case to stop Parke's attempts to collect post-judgment.**

As this Court stated at the most recent hearing in this case, Parke is the elephant in the room. Debtor's most recently filed Chapter 12 plan provides no enumerated proposed dividend to unsecured creditors and no solid determination of how much will be available to them, and there is no evidence that any creditor has detrimentally relied upon receiving a certain percentage. Parke's unsecured deficiency claim could be large, and if there is a dividend to unsecured creditors, excluding Parke's claim would be a windfall to the rest of the pool.

Debtor has no substantive objection to Parke's claim. The amount due to Parke was set by the foreclosure judge in Salem County and the law division judge in Gloucester County, based upon the amount <u>agreed upon by Debtor</u>. As Judge Meisel said in *Roper and Twardowsky*, Parke's debt is "not breaking news," nor is Parke's lack of equity. Debtor is already trying to sell Parke's mortgaged property over Parke's objection for far less than the balance owed. Debtor has engaged in a number of dubious actions in this case, including use of cash collateral without court authorization or creditor consent and efforts to invalidate liens without the due process of an adversary proceeding. Debtor filed this case as a Chapter 12 despite his pre-petition decision to liquidate his farm. Debtor listed Parke's debt as "disputed" and "unknown" despite Parke's valid, perfected liens and the agreed and entered judgments that Debtor did not appeal.

This not a "surprise" claim or a claim based upon facts or circumstances of which Debtor was unaware. Parke is Debtor's largest creditor, and the parties have been in litigation for over a year and a half, both in and out of bankruptcy. Debtor's spouse filed a Chapter 7 to stop Parke from garnishing her wages, as she is also a borrower on these loans. Debtor wants all the cake, and it would be unjust to let him eat it given his conduct pre-and-post petition and the nature of Parke's claim.

## IV. CONCLUSION

WHEREFORE, Parke Bank respectfully requests that this Court deny Debtor's Motion to Disallow Parke's claim and grant Parke's Cross-Motion to Allow the claim.

                                                  Respectfully submitted,
                                                  SALDUTTI LAW GROUP
                                                  Counsel for PARKE BANK

                                                  */s/ Rebecca K. McDowell*
                                                  REBECCA K. MCDOWELL, ESQ.

Dated: November 5, 2020